IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RYAN BONNEAU,

       Petitioner,

    v.

J.E. THOMAS,

       Respondent.

Case No. 3:12-cv-00123-PA

OPINION AND ORDER

Ryan Bonneau
66700-065
Federal Detention Center
P.O. Box 6000
Sheridan, OR 97378

      Petitioner, *Pro Se*

S. Amanda Marshall
United States Attorney
Ronald K. Silver, Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

      Attorneys for Respondent

1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2241 challenging the legality of a January 25, 2012 prison disciplinary hearing which resulted in his loss of 27 days of good-time credits, placement in disciplinary segregation, and the loss of email privileges.  Because petitioner failed to exhaust his administrative remedies prior to filing this action, the Amended Petition for Writ of Habeas Corpus (#13) is dismissed.

## BACKGROUND

On December 30, 2011, petitioner was charged with a violation of Code 299, Conduct which Disrupts or Interferes with Security or the Orderly Running of the Institution, Most like Code 203, Threatening Another With Bodily Harm Or Any Other Offense.  The charge arose when another inmate at petitioner's prison requested protective custody when petitioner began circulating information within the prison showing the inmate to be a sex offender.  Special Investigative Services Technician G. Martin wrote up an incident which described the facts giving rise to the charge:

> When interviewed, inmate [REDACTED] indicated inmate BONNEAU had been looking up other inmate cases on the electronic law library and had been spreading rumors around that he was a sex offender.  Inmate [REDACTED] had been telling everyone that was not true.  On December 29th, inmate [REDACTED] was given a copy of a court opinion which indicated he had been convicted of Indecency with a Child in the Third Degree.  Upon being shown proof other inmates knew of his conviction, inmate [REDACTED] became fearful for his safety and

2 - OPINION AND ORDER

sought protective custody.  Inmate [REDACTED] gave the documentation to Lt. Keller.  Based on my own experience and training, I know if other inmates at FCI Sheridan are found to be a sex offender by other inmates, they will be physically threatened and/or assaulted by other inmates.

Records indicate on the morning of December 29, 2011, at 9:24 a.m., inmate BONNEAU logged onto the electronic law library using a unique code assigned only to him.  Inmate BONNEAU accessed the court opinion paperwork on inmate [REDACTED] showing he was a sex offender and printed out the paperwork.  This paperwork is identical to the paperwork given to Lt. Keller by inmate [REDACTED].  It is this investigator's conclusion that inmate BONNEAU printed off paperwork on inmate [REDACTED] and provided it to other inmates in an attempt to threaten inmate [REDACTED] to remove himself from the general population of FCI Sheridan.

Declaration of Daniel Cortez, p. 3.

The Unit Disciplinary Committee referred the case to the Disciplinary Hearing Officer ("DHO") for a hearing where petitioner declined to call any witnesses.  *Id* at 4; Cortez Declaration, Att. 1, p. 2.  The DHO appointed Case Manager T. Blunk to act as petitioner's representative, but Mr. Blunk was unavailable on the day of petitioner's hearing. Cortez Declaration, Att. 1, p. 1.  The DHO gave petitioner the option of postponing the hearing until Mr. Blunk was available, obtaining another staff representative, having another staff representative appointed, or continuing the hearing without a staff representative.  Petitioner opted for this last option.  *Id.*

3 - OPINION AND ORDER

Petitioner offered the following statement at his hearing:

> I did print that out.  The first reason is
> because I wanted to see if it was false.  I
> had been hanging out with him and I think I
> have a right to know who I am hanging out
> with.  I printed it out because it had a lot
> of information about due process and other
> legal information.  I hadn't had a chance to
> read it yet.  I took it back to the unit to
> read.  I didn't make any copies of it.  I know
> other inmates were looking him up.  I had
> never spoke[n] to him until I got there in
> SHU.  I heard he had been kicked off a couple
> other tiers.  I did ask him about him telling
> the Lieutenant.  He told me he didn't tell the
> Lieutenant and he didn't know who I was.
> People in the unit found out about him before
> I did.  I didn't threaten him directly or
> otherwise.  The paperwork is going to be the
> same no matter who printed it out.  I didn't
> get rolled up until the next day and I didn't
> get a copy until that day.  I don't understand
> how one person can say something and get
> someone else locked up.  I had tried to stick
> up for him in the unit so that he didn't get
> hurt.  I have less than a year to the gate.
> No one asked me to print them out for him.  It
> doesn't seem right that the investigation
> focused on me.  It was his cell mate that gave
> him the paperwork.  Where did the cell mate
> get the paperwork?

*Id* at 1-2.

The DHO considered this statement, other statements petitioner

had previously made, and a memorandum submitted by Lieutenant J.

Keller which reads, in part, as follows:

> During my interview, I asked inmate [REDACTED]
> to describe the inmate from 4B who was
> producing the legal paperwork.  Based on the
> physical description by inmate [REDACTED] I
> showed a photo of inmate Bonneau . . . and

4 - OPINION AND ORDER

> inmate [REDACTED] positively identified him as
> the inmate producing the legal work.

Cortez Declaration, p. 5.

The DHO also considered an email petitioner received on January 11, 2012 from a federal inmate in California discussing, acknowledging, and encouraging petitioner to violence against "Chomos," a slang term for child molesters. Cortez Declaration, Att. 1, p. 10. Based upon all of this information, the DHO found petitioner committed the prohibited conduct and sanctioned petitioner with: (1) the loss of 27 days of good conduct time; (2) 30 days disciplinary segregation; (3) 30 days disciplinary segregation, suspended pending 180 days of clear conduct; (4) 60 days loss of e-mail privileges; and (5) the execution of 15 of days previously suspended disciplinary segregation. Cortez Declaration, Att. 1, p. 4.

Petitioner did not seek administrative review, and instead filed this habeas corpus action. Petitioner filed his Amended Petition on January 31, 2012 in which he raises two grounds for relief:

> (1) the DHO violated petitioner's right to procedural due process when he (a) was not impartial and predetermined petitioner's guilt; (b) refused to call petitioner's requested witnesses; and (c) denied petitioner's staff representative appointed by the Warden; and

> (2) the DHO violated petitioner's right to substantive due process when he convicted him of the charged conduct when there was

5 - OPINION AND ORDER

no proof he disseminated the information
he printed out.

Respondent asks the court to deny relief on the Amended
Petition because: (1) petitioner failed to exhaust his
administrative remedies; and (2) petitioner's due process claims
lack merit.

## DISCUSSION

It is well settled that federal prisoners must exhaust their
federal administrative remedies prior to filing a habeas corpus
petition. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986);
*see also Fendler v. United States Parole Com'n*, 774 F.2d 975, 979
(9th Cir. 1985).    While the exhaustion requirement is not
jurisdictional, its importance is well established.    *Brown v.
Rison*, 895 F.2d 533, 535 (9th Cir. 1990).

Requiring a petitioner to exhaust his administrative remedies
aids "judicial review by allowing the appropriate development of a
factual record in an expert forum." *Ruwiwat v. Smith*, 701 F.2d
844, 845 (9th Cir. 1983). Use of available administrative remedies
conserves "the court's time because of the possibility that the
relief applied for may be granted at the administrative level."
*Id.* Moreover, it allows "the administrative agency an opportunity
to correct errors occurring in the course of administrative
proceedings." *Id.; United Farm Workers v. Arizona Agric. Employ.
Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982). "Exhaustion of

6 - OPINION AND ORDER

administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers*, 669 F.2d at 1253 (citation omitted); *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (exhaustion waived where request for administrative remedy initially denied by Community Corrections Office based upon official BOP policy and further appeal would almost certainly have been denied based upon the same policy).

Petitioner does not deny that he never filed any administrative appeal, but asserts that he was denied the forms to file an administrative appeal. The record does not support that contention.

The DHO held his hearing on January 25, 2012, seven days **after** petitioner signed his original Petition for Writ of Habeas Corpus on January 18, 2012. *See* Cortez Declaration, Att. 1, p. 1. The DHO wrote out his written report on February 9, 2012 and mailed it to petitioner the same day, 23 days after petitioner had signed his original Petition. *Id* at 5. Petitioner could not have attempted to file an administrative appeal prior to filing this case where he filed this action before his disciplinary hearing had even been held. Thus, the court finds petitioner is not credible when he claims that he was denied the relevant forms.

7 - OPINION AND ORDER

Because exhaustion of administrative remedies is to be measured at the time of filing,[1] and as petitioner did not attempt to avail himself of his prison's administrative review process, the court dismisses the Amended Petition for lack of exhaustion. The dismissal is without prejudice to petitioner's right to refile this action should he exhaust his administrative remedies.

### CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#13) is DISMISSED without prejudice. Petitioner's Motion for Summary Judgment (#20) is DENIED, and his recently-filed Motion to Expedite (#35) is DENIED AS MOOT.

IT IS SO ORDERED.

DATED this **26** day of December, 2012.

Owen M. Panner
United States District Judge

---

[1] *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993).

8 - OPINION AND ORDER